UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HAILEY GEREN                                                                                                    PLAINTIFF

v.                                              No. 2:20-CV-02246

DR. SHANE F. LASTER, P.A.
doing business as Laster Eye Center                                                              DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Dr. Shane F. Laster's motion (Doc. 18) for summary judgment, brief in support (Doc. 20), and statement of facts (Doc. 21). Defendant also filed various exhibits under seal (Doc. 19) pursuant to a protective order (Doc. 12). Plaintiff Hailey Geren filed a response (Doc. 24) in opposition and a statement of facts (Doc. 25). Defendant filed a reply (Doc. 26). For the reasons set forth below, the motion will be GRANTED.

**I.    Background**

This case arises out of Plaintiff's prior employment with Defendant. Plaintiff and Defendant worked together at Ennen Eye Center from 2017 to 2018. In early 2018, Defendant opened his own practice, Laster Eye Center, and offered Plaintiff a checkout position at Laster Eye Center. Plaintiff accepted the position. When Laster Eye Center opened in February 2018, Plaintiff's position was changed to a checkout and billing position. Plaintiff's duties included filing insurance claims and refiling any rejected optical insurance claims or rejected medical claims. If a claim was rejected, Laster Eye Center's policy was to immediately refile the rejected claim. Plaintiff was also required to assist with checkout and answering the phones when necessary.

In March 2018, Laster Eye Center hired another checkout employee to allow Plaintiff to devote more of her time to billing. At this time, Plaintiff's title changed to insurance coordinator

1

and patient accounts, and Plaintiff spent approximately 70% of her time billing insurance. At this time, Plaintiff was the employee primarily responsible for insurance billing. On September 18, 2018, Plaintiff received Laster Eye Center's employee handbook, signed a form acknowledging receipt, and acknowledged that her employment "is on an at-will basis, and that either [Laster Eye Center or Plaintiff could] terminate the employment relationship at any time and for any reason or for no reason." (Doc. 19-1, p. 2). The handbook stated, and Plaintiff understood, Plaintiff could be terminated for unsatisfactory performance, terminated for any reason, or terminated at any time without prior discipline. Laster Eye Center's handbook also allowed for at least six weeks leave for pregnancy or childbirth.

Because Plaintiff had not previously worked as an insurance coordinator, or with insurance billing, Laster Eye Center sent Plaintiff to various trainings related to billing, however, not all of the trainings Plaintiff attended were insurance billing specific. Plaintiff often asked Defendant and Chelsea Dutra, Laster Eye Center's office manager, billing questions but no one had complete knowledge of how to bill insurance. In August 2018, Defendant and Ms. Dutra conducted Plaintiff's annual review and discussed Plaintiff's need to improve billing. Plaintiff was directed to work with her supervisor on a monthly aging report given to Defendant and was instructed that Defendant did not want claims pending. After this performance review, Plaintiff knew Defendant believed there were areas of her employment that needed improvement. Plaintiff was also aware that the handbook allowed for discipline or termination if there were performance areas that needed improvement. (Doc. 24-1, p. 55-56).

In 2019, Ms. Dutra had multiple conversations with Plaintiff about Plaintiff's job performance and the continuing need to improve performance. In May 2019, Plaintiff told her supervisor she was pregnant, and it was agreed that Plaintiff would take twelve weeks maternity

leave and co-workers would cover Plaintiff's duties. To prepare for maternity leave, Plaintiff was instructed to train Darcy McCormick to bill insurance. On May 8, 2019, Plaintiff received a verbal warning for not training Ms. McCormick. In July or August 2019, Laster Eye Center received a patient complaint that Plaintiff had incorrectly informed a patient that the patient did not owe Laster Eye Center any money. Ms. Dutra investigated the complaint and found Plaintiff had not charged the patient for the deductible amount the patient was responsible for, and instead Plaintiff wrote the amount off. After the complaint investigation revealed this billing error, Laster Eye Center investigated outstanding claims and write-offs.

The outstanding claims and write-offs investigation revealed several instances of Plaintiff's improper billing. One instance was a 264-day-old claim in which the insurance company rejected the claim because the patient's policy was not in effect. Plaintiff did not attempt to get the patient's correct insurance information or charge the patient for the visit. Laster Eye Center also discovered a 305-day-old claim that was denied because Plaintiff billed the visit as a new patient instead of an established patient, and Plaintiff did not change the billing code and resubmit the claim. It was also discovered Plaintiff had improperly billed insurance for new glasses for multiple patients. Further, Plaintiff had improperly billed Oklahoma Medicaid on twelve occasions, despite having properly billed Oklahoma Medicaid several other times. Laster Eye Center was able to determine Plaintiff was responsible because billing software reflected the claims were entered by a user logged in with Plaintiff's username.

On August 22, 2019, Ms. Dutra had a discussion with Plaintiff about Plaintiff's conduct in searching through Ms. McCormick's desk without permission for "working fee sheets" and Plaintiff was told to not repeat this conduct. On August 28, 2019, Defendant and Ms. Dutra performed Plaintiff's annual performance review and identified several performance areas in need

of improvement. Plaintiff understood that Defendant still was not satisfied with her performance on insurance billing and knew her performance needed to improve. (Doc. 18-3, pp. 32-33). Defendant discussed the various issues with Plaintiff's performance and told Plaintiff her performance would be reevaluated in 30 days. On September 9, 2019, Ms. Dutra and Plaintiff discussed Plaintiff turning down the ringer on her office phone and Plaintiff not answering the phone.

On September 12, 2019, Defendant, Ms. Dutra, and Plaintiff had a meeting and discussed the various incidents discovered through Laster Eye Center's investigation. One specific error was the billing of glasses to Oklahoma Medicaid in which Plaintiff repeatedly only billed for one eyeglasses lens, despite eyeglasses having two lenses. Defendant and Plaintiff discussed the Oklahoma Medicaid billing error and Defendant did not believe Plaintiff was truthful about the error. Plaintiff was terminated on September 12, 2019. Plaintiff was informed she was terminated because of poor performance. Defendant testified Plaintiff was terminated because of his belief Plaintiff lied regarding the Oklahoma Medicaid billing error. Since her termination in September 2019, Plaintiff remains unemployed. Although Plaintiff has received at least two job offers, she has turned them down because the jobs did not suit her.

On November 12, 2020, Plaintiff filed a complaint against Defendant in the Circuit Court of Sebastian County, Arkansas alleging Defendant terminated her because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 and the Civil Rights Act of 1991, and the Arkansas Civil Rights Act. On December 29, 2020, Defendant filed a notice of removal in this Court. Defendant argues summary judgment is proper because Plaintiff cannot establish a prima facie case of discrimination and because Defendant had a legitimate nondiscriminatory reason for Plaintiff's termination.

## II. Legal Standard

On a motion for summary judgment the Court views the record in the light most favorable to the nonmoving party and grants all reasonable factual inferences in the nonmovant's favor, and only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). The nonmovant may not rely only on allegations in the pleadings but must identify specific and supported facts that will raise a genuine and material issue for trial. *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997)). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

## III. Analysis

Plaintiff's claims under Title VII and the Arkansas Civil Rights Act are analyzed under the same framework. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000). The parties agree there is no direct evidence of discrimination and the *McDonnell Douglas* framework applies. *See Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the burden to establish a prima facie case of discrimination. *Id.* "A plaintiff meets this burden 'by showing that he or she:

(1) is a member of a protected group; (2) was meeting expectations of the employer; (3) suffered an adverse employment action; and (4) [suffered] under circumstances permitting an inference of discrimination.'" *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012) (alteration in original) (citing *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005)). "Once a plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Id.* (quotations and citation omitted). "If the employer meets its burden, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Id.*

Plaintiff argues she has established a prima facie case of discrimination. Even if Plaintiff could establish a prima facie case, Defendant has articulated a legitimate nondiscriminatory reason for Plaintiff's termination. After a patient complaint, Defendant investigated and discovered Plaintiff failed to properly bill insurance or refile denied claims multiple times. It appears the most egregious error involved Plaintiff billing Oklahoma Medicaid for only one eyeglasses lens instead of two, which cost Laster Eye Center thousands of dollars. Defendant had multiple conversations with Plaintiff regarding her poor job performance, and Plaintiff understood her performance needed to improve. Defendant ultimately decided to terminate Plaintiff because he felt he could not trust Plaintiff to continue working at Laster Eye Center. Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.

In response, Plaintiff argues Defendant's reasons were a pretext. A plaintiff can show pretext sufficient to overcome summary judgment by "demonstrating that the employer's stated reason for the termination is false . . . *and* that discrimination was the real reason." *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 808 (8th Cir. 2020) (citations and quotations omitted).

Plaintiffs may also show pretext by "presenting evidence that the employer treated similarly-situated employees in a disparate manner." *Id.* (citing *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).  However, the "test for whether someone is sufficiently similarly situated . . . is rigorous . . . [and] the comparator must be similarly situated in all relevant respects." *Id.* at 808-09 (citation and quotations omitted).  In deciding whether a plaintiff has met her burden to show pretext for unlawful discrimination, the Court is not "'a super-personnel department'" and does not "'decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (quoting *Harrvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) and *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)).

Plaintiff argues Defendant's reasons are a pretext because Defendant testified that his sole reason for Plaintiff's termination was Plaintiff's untruthfulness regarding the Oklahoma Medicaid billing errors and a dispute of fact exists as to whether Plaintiff was untruthful.  Plaintiff argues if a jury found Plaintiff was truthful, then Defendant's reason for termination is pretext.  Plaintiff misunderstands her burden to show pretext.  Defendant's reason for terminating Defendant did not have to be factually correct, and even if a jury found Plaintiff was truthful regarding the Oklahoma Medicaid errors, this would not support a finding of pretext for unlawful discrimination.  *Gray v. Ark. Dept. of Hous. & Urb. Dev.*, 310 F.3d 1050, 1052 (8th Cir. 2002) (explaining factually erroneous performance evaluations, general disagreements with job expectations, and poor supervision do not amount to Title VII discrimination).

Plaintiff also argues pretext exists because Defendant's reasons for termination changed. Plaintiff points to Defendant's testimony that before the September 12 termination meeting Defendant filled out a termination notice and listed several performance related issues as reasons

7

for termination, but Defendant testified his ultimate reason for termination was Plaintiff's perceived untruthfulness during the September 12 meeting. This is not the type of "shifting explanation" that supports an inference of pretext, nor are there "substantial changes" to Defendant's reasoning. *See E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (explaining defendant's "inconsistent explanations for precisely what convinced" defendant to terminate plaintiff does not constitute evidence of pretext when defendant does not give completely different explanations); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995-96 (8th Cir. 2011) (finding "substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext" but mere discrepancies between various documents do not create pretext when employer has a consistent reason for termination (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2011))). Instead, the record reflects Defendant filled out the termination notice with Plaintiff's performance issues, but decided he would be willing to essentially overlook the listed performance issues if Plaintiff was truthful. Defendant then decided Plaintiff was untruthful. Plaintiff does not demonstrate Defendant's articulated reasons have no basis in fact, nor would a reasonable factfinder be able to infer from any evidence in the record that the reasons are pretextual and pregnancy discrimination more likely motivated Defendant's actions. Because Defendant has articulated a nondiscriminatory reason for Plaintiff's termination, Defendant's motion will be granted.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 18) is GRANTED and this case is DISMISSED WITH PREJUDICE. Judgment will be entered separately.

IT IS SO ORDERED this 18th day of November, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE